UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| GILDA INDUSTRIES, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Civil Action No. 04-1648 (RMC) |
| UNITED STATES CUSTOMS AND BORDER PROTECTION BUREAU, | ) ) ) ) | |
| Defendant. | ) ) ) | |

**MEMORANDUM OPINION**

This case presents an interesting question under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552: can the U.S. Customs & Border Protection Bureau ("CBP") refuse to release the names and addresses of certain importers when that information, combined with other publicly available data, might be used to cause the importers substantial commercial harm? Concluding that CBP has properly relied on Exemption 4 of the FOIA, 5 U.S.C. § 552(b)(4), the Court answers the question in the affirmative and will grant summary judgment to the United States.

**I. BACKGROUND FACTS**

The material facts are not in dispute. Plaintiff Gilda Industries, Inc. is an importer of toasted breads from Spain. Compl. ¶ 3. Gilda's imports are subject to 100% duty pursuant to their classification under the Harmonized Tariff Schedule of the United States ("HTSUS")

subheading 9903.02,[1] executed by CBP. *Id.*; *see also* Declaration of Shari Suziki ("Suziki Decl.") ¶ 15. The 100% duty to which Gilda's imports are subject has its origins in a trade dispute between the European Community and the United States. The dispute arose after the European Community decided to ban imports of U.S. beef products that have been treated with hormones. In accordance with a World Trade Organization Appellate Body Decision in the dispute, HTSUS subheading 9903.02 was enacted to impose duties on certain European products in retaliation for the ban on American beef. Suziki Decl. ¶ 15. The products that fall within HTSUS subheading 9903.02 include "'[r]usks, toasted bread and similar toasted products (provided for in subheading 1905.40)' classifiable under subheading 9903.02.35, HTSUS." *Id.*

On January 5, 2004, Gilda submitted a FOIA request to CBP for "[t]he names and addresses of all importers for the quarter ending September 30, 2003 that paid 100% duties pursuant to HTSUS subheading 9903.02." Suziki Decl. Ex. A. The information that Gilda requested is submitted on Import Declarations that importers of merchandise into the United States are required to file with CPB. Suziki Decl. ¶¶ 11-12. CPB maintains the information in a database called the Automated Commercial System ("ACS"). *Id.* ¶ 9. ACS is "the comprehensive compilation of several CBP electronic database systems which accommodates the numerous transactions involved in CBP business" and contains "all of the commercial entry information submitted to CBP at over

---

[1] The HTSUS is the United States' implementation of the internationally agreed-upon Harmonized System ("HS"). The HS is a complete product classification system that covers all imported merchandise. At the international level, the HS consists of approximately 5,000 article descriptions that appear as four digit headings and six digit subheadings. *See* Declaration of Shari Suzuki ¶ 14.

300 ports nationwide." *Id.* Pursuant to Gilda's FOIA request, CPB searched the ACS by using the HTSUS subheading 9903.02 and the date range of July through September 2003. *Id.* This search revealed identifying information for 212 importers. *Id.*

In a remarkably rapid turn-around, CBP notified Gilda, by letter dated January 13, 2004, that it had located records on 212 importers but that it was withholding the identifying information on the grounds that its association with the cited HTSUS subheading would reveal confidential commercial information that is exempt from disclosure under FOIA Exemption 4.[2] Suzuki Decl. Ex. B. Gilda promptly appealed the decision to withhold the information, *id.* Ex. C, which was affirmed by the Chief of CBP's Disclosure Law Branch on September 10, 2004. *Id.* Ex. E.

Gilda sued on September 24, 2004. The case sat quiescent until the Court, *sua sponte*, issued an order on April 12, 2006, ordering the parties to file dispositive motions or a joint status report by May 11, 2006. Thus reminded of the pending case, the parties filed cross motions for summary judgment which have now been fully briefed.

## II. LEGAL STANDARDS

FOIA requires agencies of the federal government to release records to the public upon request, unless one of nine statutory exemptions applies. *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 136 (1975). "[D]isclosure, not secrecy, is the dominant purpose of the Act." *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976); *DOI v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001). Because this case arises under FOIA, the Court has subject matter jurisdiction.

---

[2] CBP also told Gilda that releasing such confidential commercial information is prohibited by the Trade Secrets Act, 18 U.S.C. § 1905, but does not pursue that point here.

*See* 5 U.S.C. § 552(a)(4)(B); *see also Sweetland v. Walters*, 60 F.3d 852, 855 (D.C. Cir. 1995). And because its request for information under FOIA was denied, Gilda has standing to sue. *See Zivotofsky v. Sec'y of State*, 444 F.3d 614, 617 (D.C. Cir. 2006) ("Anyone whose request for specific information [under FOIA] has been denied has standing to bring an action").

### A. FOIA Exemption 4

FOIA Exemption 4 protects from public disclosure information that is "(1) commercial or financial, (2) obtained from a person, and (3) privileged or confidential." *Pub. Citizen Health Research Group v. FDA*, 704 F.2d 1280, 1290 (D.C. Cir. 1983); *see also* 5 U.S.C. § 552(b)(4). Records are deemed to be "commercial" as long as the submitter has a "commercial interest" in them. *See FDA*, 704 F.2d at 1290. And records are considered to be "obtained from a person" as long as they were submitted by a "partnership, corporation, association, or public or private organization other than an agency." 5 U.S.C. § 551(2).

Whether information qualifies as "confidential" under Exemption 4 is a more complex question. The first step in the analysis focuses on whether the information was submitted involuntarily; that is, whether the submitter was required to provide the information to the Government. *See Pub. Citizen Health Research Group v. FDA*, 185 F.3d 898, 903 (D.C. Cir. 1999). If so, the information is deemed confidential if its disclosure is "likely either '(1) to impair the Government's ability to obtain necessary information in the future; or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained.'" *Id.* (quoting *Nat'l Parks & Conservation Ass'n v. Morton*, 498 F.2d 765, 770 (D.C. Cir. 1974)). The second element of this test "has been interpreted to require both a showing of actual competition and a likelihood of substantial competitive injury." *CNA Fin. Corp. v. Donovan*, 830 F.2d 1132, 1152

(D.C. Cir. 1987). A "competitive injury" is one "flowing from the affirmative use of proprietary information by competitors." *FDA*, 704 F.2d at 1291 n. 30. In assessing whether the second element is met, "the Court need only 'exercise its judgment in view of the nature of the material sought and competitive circumstances in which the submitter does business,' but 'no actual adverse effect on competition need be shown.'" *Changzhou Laosan Group v. U. S. Customs & Border Prot. Bureau*, No. 04-1919, 2005 WL 913268, at *5 (D.D.C. Apr. 20, 2005) (quoting *Nat'l Parks & Conservation Ass'n v. Kleppe*, 547 F.2d 673, 675 (D.C. Cir. 1976)).

**B. Summary Judgment**

Summary judgment is the routine method for resolving most FOIA actions when there are no material facts genuinely at issue. *See Alyeska Pipeline Serv. Co. v. EPA*, 856 F.2d 309, 313-14 (D.C. Cir. 1988); *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). "In a suit brought to compel production [of records], an agency is entitled to summary judgment if no material facts are in dispute and if it demonstrates 'that each document that falls within the class requested either has been produced . . . or is wholly exempt from [FOIA's] inspection requirements.'" *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001) (quoting *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978)). A district court conducts a *de novo* review of an agency's determination to withhold information under FOIA. *See* 5 U.S.C. § 552(a)(4)(B); 5 U.S.C. § 552a(g)(3)(A).

It is the agency opposing disclosure of the information under FOIA that bears the burden of establishing that the claimed exemption applies. *See* 5 U.S.C. § 552(a)(4)(B); *see also Assassination Archives & Research Ctr. v. CIA*, 334 F.3d 55, 57 (D.C. Cir. 2003). "Summary judgment is warranted on the basis of agency affidavits when the affidavits describe 'the

justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *Miller v. Casey*, 730 F.2d 773, 776 (D.C. Cir. 1984) (quoting *Military Audit Project*, 656 F.2d at 738).  And although an agency opposing disclosure based on Exemption 4 is not required to provide a detailed economic analysis of the competitive environment, it must provide affidavits that contain more than mere conclusory statements of competitive harm.  *See Pac. Architects and Eng's, Inc. v. Renegotiation Bd.*, 505 F.2d 383, 384 (D.C. Cir. 1974) (requiring agencies to provide more than generalized assertions and conclusory allegations).

### III.  ANALYSIS

Now we come to the interesting part.  There is no dispute here that the information Gilda requests is "commercial" information that was "obtained from a person."  *See Trans-Pac. Policing Agreement v. U. S. Customs Serv.,* No. 98-2118, 1998 WL 34016806, at *2 (D.D.C. May 14, 1998) ("There is no doubt that all information on an Import Declaration, including HTS numbers, is 'commercial' and is 'obtained from a person' (the importer)."), *rev'd on other grounds*, 177 F.3d 1022, 1025-26 (D.C. Cir. 1999)).  The only dispute is whether the information is "confidential." Because CBP has not argued that disclosure of the information would impair its "ability to obtain necessary information in the future," the only issue facing the Court is whether disclosure of the information is likely to cause "substantial harm to the competitive position" of the 212 importers in question.  *Morton*, 498 F.2d at 770.  And since there seems to be no disagreement that there is "actual competition" among Gilda and the 212 importers whose identities Gilda hopes to obtain, this

case turns on one question — whether disclosing the names and addresses of the 212 importers would create a likelihood of "substantial competitive injury."  *Donovan*, 830 F.2d at 1152.

This sounds so simple: what is the harm in knowing the names and addresses of importers?  CBP responds that it is not the names and addresses alone that qualifies them as confidential; it is the association of a particular importer and a particular time frame with a particular HTSUS subheading that is likely to cause competitive harm.  Suzuki Decl. ¶ 16.  CBP explains that pairing specific importers with the precise products that they import during a particular three-month period would be valuable to a competitor hoping to gain an edge in the relevant market:

> Specifically, were a competitor to know that a particular company imports a certain spice, chemical, additive, or other material, the competitor might easily deduce that company's components of production or "secret ingredient." (Suzuki Decl. at ¶ 17).  Other product descriptions may reveal to competitors that a particular company is expanding its product line or entering a new market. (*Id.*).  Indeed, many of the HTSUS classifications are so specific as to reveal textile fiber content, method of manufacture, intended use, and unit price.

Def.'s Mem. in Supp. of Opp'n to Pl.'s Mot. for Summ. J. and Cross Mot. for Summ. J. ("Def.'s Mem.") at 11.

CBP further argues that Gilda and other competitors could "couple the requested information with [information] available in the public domain to reveal additional business secrets of the importers at issue." Def.'s Mem. at 11.  Each carrier of imported goods into the United States completes a Cargo Declaration or Inward Vessel Manifest, which contains a general description of the goods in broad industry terms, quantity, units, weight, and country of origin.  This is a different document than the Import Declaration, which contains the HTSUS information and is completed by the importer under penalty of law.  Suzuki Decl. ¶ 12.  The vessel manifest information, unlike the

Import Declaration, is available to the public.  *See* 19 U.S.C. § 1431; 19 C.F.R. § 103.31.  CBP contends that the information that Gilda seeks could be cross-referenced with "vessel manifest information to piece together the major aspects of an import transaction and ascertain an even more highly specified description of the imported goods."  Suzuki Decl. ¶ 12.

At least some of the 212 importers in question agree with CBP.  Five importers submitted letters requesting that the information in question remain confidential because public disclosure would compromise valuable business data such as "sources of supply, product lines[,] supply chains and customers."  Suzuki Ex. F-2.  If this information were publicly disclosed, it would "enable a competitor to target those suppliers who are of most benefit to the company . . . by offering slightly higher prices[ ] or . . . otherwise disrupt[ing] . . . supply chain[s] abroad."  *Id.* Ex. F-4.[3]

This Court agrees with CBP.  The information in question, when combined with publicly available vessel manifest information, would provide Gilda with valuable knowledge regarding its competitors' business operations — information that those competitors consider confidential.  Indeed, at least some of those companies have previously asked CBP to treat the information as confidential, see Suzuki Decl. Ex. F-3, and CBP "does not as a matter of course release information from Import Declarations, which apply HTS numbers to specific shipments of goods," *Trans-Pac. Policing Agreement*, 1998 WL 34016806, at *4.  It is not a stretch to understand why these companies and CBP consider the information to be confidential: a competitor could use

---

[3] Gilda objects to the letters on the ground that they are insufficient to claim confidential treatment under 19 U.S.C § 1431(c).  Pl.'s Mem. of P & A In Opp'n to Def.'s Mot. for Summ. J. ("Plf's Opp. Mem.") at 2-3.  But the Court does not read CBP's memorandum to say that the letters are formal confidentiality requests under 19 U.S.C. § 1431(c).  Rather, they are evidence indicating that the companies consider the information in question to be confidential and damaging to their business operations if released to the public.

the information to gain a competitive advantage by, for example, arrogating another company's exclusive source of supply. The Court therefore concludes that the disclosure of this information would likely cause substantial competitive injury to the companies that submitted the information.

Gilda raises three arguments in support of its contention that disclosing the names and addresses of the 212 importers will not cause any competitive injury. First, Gilda argues that "the bare disclosure of the names of the companies is not precluded by" Exemption 4. Pl.'s Mot. for Summ. J. ("Plf's MSJ") at 7. But Gilda seeks more than "the bare disclosure of the names of companies" — it seeks the disclosure of the names of companies who imported goods during the fourth quarter of 2003 that were subject to the 100% duty imposed under HTSUS subheading 9903.02. And as explained above, the association of company names with detailed HTSUS data relating to shipments during a specific time period exposes confidential information that could be used to inflict competitive injury on the companies.

Second, Gilda contends that the information is not confidential because it is already publicly available: CBP publishes the HTSUS subheadings, including the commodities and countries of origin which fall under each and the applicable rate of duty, and may release names of importers pursuant to 19 C.F.R. § 103.31(e)(3)15. *See* Plf's MSJ at 4. Gilda again misses the point. It is true that HTSUS numbers are publicly available — in the abstract. It is also true that the names of importers may be publicly available — in the abstract. But it is the association of a specific importer with a specific shipment of goods and a specific HTSUS subheading number that makes the requested information potentially damaging (and, concomitantly, potentially useful to the importer's competitors). As Judge Harold H. Greene of this Court has already found, even if the information subject to a FOIA request would not itself threaten competitive injury, it is properly protected if the

requester has other, public sources of information that would could complete the picture of its competitors. *Timken Co. v. U. S. Customs Serv.*, 491 F. Supp. 557, 559-560 (D.D.C. 1980).

Gilda also claims that the information it seeks is publicly available to anyone who subscribes to the Port Import Export Reporting Service (PIERS). Plf's Opp. Mem. at 3-5. To support this claim, Gilda submits three printouts from PIERS that purport to contain an importer's name as well as the HTSUS subheading for goods contained in a particular shipment. *See* Second Declaration of Peter S. Harrick Ex. B. But these documents are insufficient, as a matter of law, to overcome the applicability of Exemption 4. In order to establish that the Exemption is inapplicable, Gilda "bear[s] the initial burden of pointing to specific information in the public domain that appears to duplicate that being withheld." *Davis v. United States Dep't of Justice*, 968 F.2d 1276, 1279 (D.C. Cir. 1992) (internal quotations and citations omitted). The PIERS documents fail to satisfy this burden. They show, at most, only that the same general type of information is available on PIERS, not that there is "a permanent public record of the exact" information that Gilda seeks. *Id.* at 1280. Moreover, the HTSUS information contained in the PIERS documents is not obtained from CBP, but rather is assigned by PIERS based on its analysis of vessel manifest information. *See* Def.'s Reply in Further Support of Its Mot. for Summ. J. at 3. Vehicle manifest information is inherently less detailed and less reliable than the Import Declaration filed by an importer. Suzuki Decl. ¶ 12. Thus, Gilda has failed to show that the HTSUS information on PIERS is even accurate, let alone identical to the information it seeks from CBP.

Finally, Gilda argues that CBP has failed to satisfy its burden of showing that release of the specific information at issue would cause substantial competitive injury. Plf's Opp. Mem. at 3. Although CBP's analogies to cheese and chemicals are technically irrelevant to show that the 212

importers would suffer competitive injury in the toasted bread market, the Court is satisfied that the specific information at issue — importer names and addresses paired with HTSUS data revealing the specific goods contained in particular shipments — could be used to gain a significant competitive edge over the 212 importers who submitted the information.

The world is more complex than it might appear at first blush. Disclosure of the names and addresses of importers who paid 100% duties under HTSUS subheading 9903.02 during a specified time frame, when cross-referenced with publicly available vehicle manifest information for specific shipments, would reveal information that could cause substantial competitive harm. In short, the requested information could allow Gilda to steal business away from or otherwise disrupt the operations of its competitors. Moreover, given the contours of Gilda's FOIA request, there is no way that CBP could segregate the protected information in a way that would eliminate the likelihood of competitive injury. *See Trans-Pac. Policing Agreement*, 177 F.3d at 1028 (district courts have a duty to consider segregability in FOIA cases); *Mead Data Ctr., Inc. v. U. S. Dep't of the Air Force,* 566 F.2d 242, 260 (D.C. Cir. 1977) (information cannot be segregated if it is "inextricably intertwined with exempt portions."). Therefore, CBP properly withheld the requested information pursuant to FOIA Exemption 4.[4]

---

[4] CBP also argues that some of the information that Gilda requests is protected from disclosure under FOIA Exemption 6. *See* Def.'s Mem. at 14-16. Because the Court concludes that the information is protected under Exemption 4, it does not need to address the applicability of Exemption 6 and expresses no opinion on that subject.

## IV.  CONCLUSION

For the reasons stated above, the cross motion for summary judgment filed by CBP shall be granted and the motion for summary judgment filed by Gilda shall be denied.  A memorializing order accompanies this Memorandum Opinion.


                                                            /s/
                                              ROSEMARY M. COLLYER
                                              United States District Judge
DATE:  October 19, 2006